## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ROME DIVISION

| | | |
|---|---|---|
| Dodd Avenue Atlanta Propco, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION FILE |
| | ) | |
| Johnson Group Properties, LLC. | ) | NO. _____ |
| | ) | |
| Defendant. | ) | |
| | ) | |

## VERIFIED COMPLAINT

Plaintiff Dodd Avenue Atlanta Propco, LLC ("Plaintiff"), by and through its counsel, submits this Verified Complaint against Johnson Group Properties, LLC ("Defendant"), and shows the following:

## PARTIES

1.     Plaintiff Dodd Avenue Atlanta Propco, LLC is a Delaware limited liability company registered to transact business in Georgia with its principal place of business located at 820 A1A North, Suite E21, Ponte Vedra Beach, Florida, 32082.

2.     Defendant Johnson Group Properties, LLC is a Georgia limited liability company with a principal place of business at 661 Johnson Lake Road,

Adairsville, Georgia, 30103.

## JURISDICTION AND VENUE

3.     This Court has diversity jurisdiction under 28 U.S.C. § 1332 because: (a) there is diversity of citizenship as between each of the members of Plaintiff, on the one hand, and Defendant, on the other hand; and (b) the aggregate amount of Plaintiff's claims against Defendant exceeds $75,000.00.

4.     Plaintiff Dodd Avenue Atlanta Propco, LLC is a Delaware limited liability company with its principal place of business in Florida, and it has no Georgia citizen members.  Plaintiff is wholly owned by Dodd Avenue Atlanta Venture, LLC, a Delaware entity with no Georgia citizen members. Dodd Avenue Atlanta Venture, LLC's members are (1) Dodd Avenue Atlanta Venture, LLC, a Delaware entity with no Georgia citizen members, and (2) Hawks Bay, LLC, a Nevada entity with no Georgia citizen members. Dodd Avenue Atlanta Venture, LLC is wholly owned by InLight Real Estate Partners, LLC, a Delaware entity with no Georgia citizen members. InLight Real Estate Partners, LLC's members are (1) InLight Berryhill Member, LLC, a Florida entity wholly owned by Florida citizen and individual Jeff Berryhill, (2) JDJB Holdings, LLC, a Florida entity wholly owned by Florida citizen and individual David Burch, (3) Virani Trust, a Texas trust for the benefit of individual trust beneficiaries and Texas citizens Faraz

Virani and Zoya Virani, and (4) Cope LLC, a Florida entity wholly owned by Texas citizen and individual Grant Copeland. The members of Hawks Bay, LLC are (1) David C. Miller Living Trust, a Florida trust for the benefit of individual trust beneficiary and Florida citizen Myrna Miller, and (2) Chan Hwa Trading Corporation, a Nevada corporation with its principal place of business in Florida.

5.      On information and belief, the sole member of Defendant Johnson Group Properties, LLC is Larry Johnson, a citizen of Georgia. Thus, there is complete diversity of citizenship as between Plaintiff and Defendants.

6.      The amount in controversy is in excess of $75,000, as set out herein.

7.      This Court has personal jurisdiction over Defendant Johnson Group Properties, LLC, formed in the state of Georgia with Georgia citizen members, and with an appointed registered agent, Dixie Johnson, who may be served with process at 661 Johnson Lake Road, Adairsville, GA, 30103.

8.      Venue is proper in the Rome Division of this District pursuant to 28 U.S.C. § 1391(a)(2), as a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District and the property that is the subject of the action is situated in this District, namely, Gordon County.

**FACTUAL BACKGROUND**

9.      On April 18, 2022, Plaintiff purchased four adjacent parcels of

3

property spanning hundreds of acres in Gordon County for the purpose of future real estate and commercial development. The purchase price of the property was approximately $8,425,000.

10.     Critical to Plaintiff's decision to purchase the property was its ability to obtain an easement over another parcel of adjacent land owned by Defendant for the purpose of providing additional points of ingress and egress that would support a large-scale industrial development (*i.e.*, wider lanes, improved traffic flow, easier access for a larger number and type of vehicles).

11.     Without the road over Defendant's property to create a critical access point on Plaintiff's property, the value of Plaintiff's property would be substantially diminished by tens of millions of dollars.

12.     Indeed, without an easement over Defendant's property, Plaintiff's entire purpose in purchasing the property would be frustrated and Plaintiff never would have purchased its property in the first place.

13.     As a result, and before purchasing the property, Plaintiff negotiated and secured a mutual easement agreement with Defendant that would provide Plaintiff the access necessary to justify Plaintiff's investment in its own property purchase. Defendant knew the critical importance of the mutual easement to Plaintiff's purchase of its four parcels.

14.    To that end, on or about April 18, 2022, Plaintiff and Defendant entered into an Easement Area Description Agreement. A true and correct copy of the Easement Area Description Agreement is attached hereto as **Exhibit 1** to this Complaint.

15.    Pursuant to the Easement Area Description Agreement, Plaintiff and Defendant agreed to convey to one another certain easements over, across, and upon certain portions of the property owned by Defendant and the adjacent property owned by Plaintiff.

16.    The Easement Area Description Agreement carried an original term of six (6) months from the Effective Date of April 18, 2022, meaning it was set to expire October 17, 2022.

17.    The terms of the parties' agreement were specifically set forth in a separate and final Easement Agreement, which had already been prepared and was attached as Exhibit C to the Easement Area Description Agreement.

18.    Not only did the Easement Agreement identify the parcels to be burdened by the easements, but the locations of the easements themselves were also set forth in Exhibits C, D, and E to the Easement Agreement, as can be seen below:



*Id*. at Easement Agreement Ex. C.



*Id*. at Easement Agreement Ex. D.



**Exhibit E**

**Dodd Avenue Easement Area**

The Dodd Avenue Easement Area is generally depicted below and will be located such that it directly connects to the Johnson Lake Road Easement Area and terminates at the public ROW of Dodd Avenue.

*Id*. at Easement Agreement Ex. E.

19.     Defendant specifically agreed in Section 2 of the Easement Area Description Agreement that the parties were "in agreement on the general locations outlined" in the Easement Agreement.

20.     Exhibits F and E to the Easement Agreement provided additional detail on the design specifications of the easements:

**Exhibit F**

**General Design Elements of Johnson Lake Road Easement Area**

- The Johnson Lake Access Road shall be at sixty (60) feet in width and may be extended as necessary to satisfy requirements of Gordon County and the City of Calhoun.  The new road to be constructed from Johnson Lake Road right of way to the the common property line shared with the Johnson Parcel and InLight Parcel as depicted on <u>Exhibit C</u> attached hereto.
- The Johnson Lake Access Road shall be stubbed at the boundary of InLight Parcel.
- The Johnson Lake Access Road shall be heavy duty asphalt with a minimum of two _____ ( 2 ) lanes.
- Unless required by Gordon County, the City of Calhoun, the Johnson Lake Access Road shall not be required to have curbing or gutters and may use roadside swales in its construction, subject to Section 5(p) of this Easement Agreement.

*Id*. at Easement Agreement Exs. F and E.

<div style="border:1px solid">

**Exhibit G**

**General Design Elements of Dodd Avenue Easement Area**

Design elements for Dodd Avenue Easement Area shall be similar to those as described in Exhibit F for the Johnson Lake Road Easement Area

</div>

*Id*. at Easement Agreement Ex. G.

21.     Accordingly, the material terms of the Easement Agreement had been reached by the parties, and all that remained to be finalized in the Easement Agreement was the completion of a survey and insertion of the legal description, consistent with the description outlined in the Easement Description Agreement and Exhibits attached thereto.

22.     Upon the execution of the Easement Area Description Agreement and in reliance on Defendant's promises contained therein, Plaintiff closed on the purchase of its property for approximately $8,425,000 on April 18, 2022.

23.     Section 3(d) of the Easement Agreement contemplated that the parties could mutually agree, upon Defendant's request, to relocate the easement on the Defendant's property to accommodate the planned development of Defendant's property and to "minimize wetlands/stream impacts."

24.     On May 16, 2022, within a month of the effective date of the Easement Area Description Agreement, Plaintiff provided Defendant with a layout

of the easement on the Defendant's property based on feedback from Plaintiff's wetlands consultant, Contour Environmental.

25.    Plaintiff acted diligently from the beginning to perform its obligations under the Easement Area Description Agreement, and its initial May 16 layout was at Defendant's request and expressly intended to identify "the northernmost route that minimizes wetlands and streams impacts."

26.    Following the Plaintiff's submission of the May 16 layout, the parties continued to engage in detailed and lengthy discussions concerning the conceptual layout of the easement over Defendant's property.

27.    A significant amount of Defendant's communications came through its real estate broker, representative and agent, Chuck Dobbins.

28.     During the discussions that ensued, Plaintiff explained on June 6, 2022, that for efficiency purposes, Plaintiff could not conduct a survey or prepare a legal description until Defendant had approved the layout of the easement.

29.    The parties then conducted a phone call on June 23, 2022, and, following that call, Plaintiff ordered a wetlands delineation from Contour Environmental.

30.    Plaintiff provided the CAD file for the wetlands delineation to Defendant on August 5, 2022, an especially reasonable amount of time considering

that wetlands consultants were consistently booked out for weeks due to the volume of new development taking place in the region.

31.     Following additional discussions between the parties, the final location and layout for the access road easement was expressly approved by Defendant on September 16, 2022, via email from Defendant's real estate broker, representative and agent, Chuck Dobbins, stating as follows: "The layout depicted in the attached pdf file (InLight_Johnson Proposed Layout 08-25-22) is the layout which has been approved by Larry Johnson."

**From:** Chuck Dobbins <chuck@dobbinsproperties.com>
**Sent:** Friday, September 16, 2022 12:51 PM
**To:** David Burch <david.burch@inlightre.com>; Matt DiLeo <matt.dileo@inlightre.com>; David Yankey <david.yankey@inlightre.com>; Andy Petry <andy@mpirec.com>
**Subject:** Re: Calhoun TP 75 Access Road Layout

The layout depicted in the attached pdf file (InLight_Johnson Proposed Layout 08-25-22) is the layout which has been approved by Larry Johnson.

The approved layout is as follows:



32.     Having now come to an agreement on the conceptual layout of the

easement, the parties then mutually agreed on September 20, 2022, that, for the sake of expediency, they would depart from the contractual language of the Easement Area Description Agreement and that Defendant would ask its own surveyor to prepare the legal description of the easement over the Defendant's property.

33.    From that point forward, Plaintiff's engineer and Defendant's surveyor cooperated to conduct the survey and prepare the legal description, which was nearing final form when the parties mutually agreed on October 14, 2022, in writing, to extend the Easement Area Description Agreement to provide an additional thirty (30) days to prepare the revised Easement Agreement.

34.    When Defendant agreed on October 14, 2022, to extend the Easement Area Description Agreement, the parties had not yet received the legal description for the easement on Defendant's property.

35.    The parties' agreement to extend the Easement Area Description Agreement was thus specifically intended to permit the parties to finalize the revised Easement Agreement, and the 30-day extension through November 17, 2022, provided the parties with ample time to do so.

36.    On October 12, 2022, Defendant's agent Mr. Dobbins then expressly confirmed and represented to Plaintiff that all that was required for the execution

of the revised Easement Agreement was the legal description for the easement over Defendant's property.

37.   As such, after receiving the legal description for the easement on Defendant's property on October 18, 2022, and in further accordance with Section 1 of the Easement Area Description Agreement, David J. Burch (Managing Partner of Plaintiff) sent an updated Easement Agreement to Defendant for execution.

38.   At that time, not only had the original term of the Easement Area Description Agreement not yet expired, but in accordance with the parties' subsequent agreement, the Easement Area Description Agreement was set to remain in effect through at least November 17, 2022. Thus, Plaintiff fully and timely complied with its obligations thereunder regardless of any extension.

39.   But in the weeks following October 18, Plaintiff's Mr. Burch repeatedly attempted to speak with Defendant concerning the revised Easement Agreement but was ignored.

40.   Subsequent correspondence from Defendant's counsel, Larry Johnston, confirmed Defendant's counsel spoke with Mr. Burch, and on behalf of Defendant reaffirmed by email Defendant's commitment "to move this deal along" as late as November 17, notwithstanding the expiration of the initial extension, which amounted to a second extension by the parties' course of conduct (although

Plaintiff already complied with its own obligations).

41.     The next day, Defendant's counsel wrote a second email in which he informed Plaintiff that Defendant was going to provide its counsel with "bullet points on his concerns," and that Defendant's counsel would follow up with Plaintiff early the next week.

42.     Nevertheless, and inexplicably, on December 8, 2022, counsel for Defendant informed Plaintiff that Defendant was no longer "willing to go forward" with executing the Easement Agreement, amounting to an express repudiation of the parties' agreement.

43.     Defendant's repudiation of and refusal to move forward with the Easement Area Description Agreement amounts to breach of contract.

44.     The Easement Description Agreement is a complete agreement with all the essential and material terms of the agreement including the Easement Agreement itself and the Exhibits that described and identified the location of the easements.

45.      Defendant has no legitimate basis upon which to withhold or condition its execution of the Easement Agreement.

46.     The Easement Area Description Agreement is an enforceable contract, and Defendant's refusal to perform its obligations under Section 1 of the Easement

Area Description Agreement constitutes a breach of contract.

47.    Defendant's breach has at a minimum damaged Plaintiff in the amount of $8,425,000 – the price Plaintiff paid which was based on the value of the land to Plaintiff with the easement that Defendant promised.  Indeed, Plaintiff would not have purchased the land at all without the promised easement.

48.    The resale value of Plaintiff's parcels without the promised easement would alone result in a loss of more than $75,000 to Plaintiff, including because a single point of ingress and egress would only be suitable for a smaller residential-style development that has far less income potential than an industrial development.

49.    But more importantly, Plaintiff has in hand a contingent third-party contract for the development of its parcels for substantially more than $75,000 that depends upon the grant of the easement that Defendant promised.  Defendant is and has been fully aware of this contract. If there is no easement, Plaintiff will fail to meet the developer's contingency, lose the third-party contract altogether, and with it, the significant payment in excess of $75,000 that would be due to Plaintiff therefrom, including because the planned third-party development is the very type of large-scale industrial development for which the easement is a necessary supportive feature.

## COUNT I
## Specific Performance

50.   Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

51.   Plaintiff substantially complied with its part of the Easement Area Description Agreement by, among other things, working in good faith with Defendant to finalize the design and location of the easement over Defendant's property in accordance with Defendant's requested change relative to the wetlands.

52.   Plaintiff satisfied all conditions precedent to Defendant's performance pursuant to the Easement Area Description Agreement that were material and/or not waived by Defendant.

53.   Any alleged nonperformance by Plaintiff would have been caused by the conduct of Defendant, which explicitly directed Plaintiff to prepare the revised Easement Agreement for Defendant's signature using only the legal description of the easement over Defendant's property.

54.   Because Plaintiff did not commit any material breach of the Easement Area Description Agreement, Plaintiff is entitled to specific performance of the Easement Area Description Agreement.

55.   Plaintiff is ready, able, and willing to perform under the Easement Area Description Agreement by executing a final form of the revised Easement

Agreement.

56.     The easement rights contemplated by the Easement Area Description Agreement and Easement Agreement relate to real property which is unique in its characteristics, and monetary damages cannot fully compensate Plaintiff for its damages due to Defendant's failure to perform.

57.     Plaintiff has been damaged and stands to be further damaged by Defendant's repudiation of the Easement Area Description Agreement and refusal to execute the Easement Agreement in an amount to be proved at trial, including more than $100,000 in lost property value as a result of having no easement from Defendant, and the threatened loss of more than $100,000 from Plaintiff's contingent third-party contract for large-scale industrial development of the property that depends upon Defendant's grant of the easement.

58.     Plaintiff is entitled to a decree of specific performance requiring Defendant to execute the revised Easement Agreement pursuant to the terms and conditions set forth in the Easement Area Description Agreement.

59.     Plaintiff is also entitled to an award of consequential damages caused by Defendant's misconduct in an amount to be proved at trial.

60.     Plaintiff is also entitled to its attorney's fees under O.C.G.A. § 13-6-11 for Defendant's bad faith, causing Plaintiff unnecessary trouble and expense.

## COUNT II
## Breach of Contract (Damages in the Alternative to Specific Performance)

61.    Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

62.    Plaintiff and Defendant entered into the Easement Area Description Agreement which is an enforceable contract.

63.    Plaintiff substantially complied with its part of the Easement Area Description Agreement by, among other things, working in good faith with Defendant to finalize the design and location of the easement over Defendant's property.

64.    Plaintiff did not fail to satisfy any condition precedent to Defendant's performance pursuant to the Easement Area Description Agreement that was material and/or was not waived by Defendant.

65.    Any alleged nonperformance by Plaintiff would have been caused by the conduct of Defendant, which explicitly directed Plaintiff to prepare the revised Easement Agreement for Defendant's signature using only the legal description of the easement over Defendant's property.

66.    Defendant's repudiation of the Easement Area Description Agreement and refusal to execute the revised Easement Agreement pursuant thereto constitutes a breach of contract.

67.     Georgia law also recognizes a cause of action for breach of a promise to negotiate and cooperate in good faith. *See Crystal Steel Fabricators, Inc. v. AMEC Foster Wheeler Programs, Inc*., 349 F. Supp. 3d 1364, 1370 (N.D. Ga. 2017). In those cases, where a party breaches its promise to "conform to a specific course of conduct regarding a specific subject matter," a plaintiff may bring a breach of contract claim for the breach of that promise. *See Schwieterman v. Caterpillar Inc*., No. 1:20-CV-2611-SCJ, 2021 WL 3026958, at *6 (N.D. Ga. July 9, 2021).

68.     Here, Defendant expressly agreed in Section 2 of Easement Area Description Agreement to work with Plaintiff "in good faith and in a commercially reasonable manner to finalize the location and design" of the easements. Defendant therefore breached that promise by asking Plaintiff to prepare the revised Easement Agreement for Defendant's signature using only the legal description for the easement on Defendant's property—only to later repudiate the Agreement without any substantive reason—all while having never raised the issue of the legal description for the easement on Plaintiff's property.

69.     In doing so, Defendant also separately breached the implied covenant of good faith and fair dealing, which is a part of every contract under Georgia law. *See Mun. Elec. Auth. of Georgia v. JEA*, No. 1:18-CV-4295-MHC, 2019 WL

5586550, at *6–7 (N.D. Ga. Apr. 9, 2019).

70.    Plaintiff has been damaged and stands to be further damaged by Defendant's repudiation of the Easement Area Description Agreement and refusal to execute the Easement Agreement in an amount to be proved at trial, including more than $100,000 in lost property value as a result of having no easement from Defendant, and the threatened loss of more than $100,000 from Plaintiff's contingent third-party contract for large-scale industrial development of the property that depends upon Defendant's grant of the easement.

71.    Plaintiff is also entitled to its attorney's fees under O.C.G.A. § 13-6-11 for Defendant's bad faith, causing Plaintiff unnecessary trouble and expense.

## **<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiff demands judgment and relief against Defendant as follows:

1. That this Court order Defendant to specifically perform its obligations under the Easement Area Description Agreement; namely, executing the final form revised Easement Agreement;

2. That Plaintiff be awarded its consequential damages arising from Defendant's breach.

3. That, in the alternative, if specific performance is not granted, this

Court enter judgement in favor of Plaintiff for damages caused by Defendant's breach in an amount to be determined at trial;

4. That Plaintiff be awarded its reasonable attorney's fees and costs of litigation; and

5. For all such other relief as this Court may deem just and proper.

Respectfully submitted this 16th day of October 2024.

CAIOLA & ROSE, LLC
125 Clairemont Avenue, Suite 240
Decatur, Georgia 30030
(470) 300-1020 phone

*/s/ Anne P. Caiola*
Anne P. Caiola
Georgia Bar No. 142639
annie@caiolarose.com
Lindsay Mitchell Henner
Georgia Bar No. 272310
lhenner@caiolarose.com

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ROME DIVISION

| | | |
|---|---|---|
| Dodd Avenue Atlanta Propco, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION FILE |
| | ) | |
| Johnson Group Properties, LLC. | ) | NO. _____ |
| | ) | |
| Defendant. | ) | |
| | ) | |

## **VERIFICATION**

My name is David J. Burch, and I am the Managing Partner of InLight Real Estate Partners, LLC, an indirect owner of Plaintiff Dodd Avenue Atlanta Propco, LLC, and I hereby verify under penalty of perjury under the laws of the United States of America that the factual statements in the *Verified Complaint* are true and correct to the best of all current and available knowledge.

This 15th day of October 2024.

_____
David J. Burch